# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

PREMIER ENTERTAINMENT BILOXI, LLC,
D/B/A HARD ROCK HOTEL & CASINO BILOXI
AND PREMIER FINANCE BILOXI CORP.,                    CASE NO. 06-50975-NPO

DEBTORS.                                             CHAPTER 11

### MEMORANDUM OPINION AND ORDER
### SUSTAINING REORGANIZED DEBTORS' OBJECTION AND
### DISALLOWING PROOF OF CLAIM OF CUSTOM PACK, INC.

On April 2, 2009, this matter came before the Court for hearing (the "Hearing") on the Reorganized Debtors' Objection to Proofs of Claim (the "Debtors' Objection") (Dkt. #574) filed by Premier Entertainment Biloxi, LLC, d/b/a Hard Rock Hotel & Casino Biloxi, and Premier Finance Biloxi Corp. (the "Debtors"). At the Hearing, Robert A. Byrd represented the Debtors, and John G. McDonnell represented Custom Pack, Inc. ("Custom Pack"). The Court, having considered the pleadings and briefs as well as the stipulations, exhibits, and arguments of counsel presented at the Hearing, finds that the Debtors' Objection as to Custom Pack is well taken and should be sustained as set forth herein. Specifically, the Court finds as follows:[1]

### Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Notice of the Hearing on the Debtors' Objection was proper under the circumstances.

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

1

**Facts**

The following facts were essentially stipulated to by the parties in the Joint Stipulation (the "Joint Stipulation") (Dkt. #628)[2]:

1. On August 1, 2005, the Debtors entered into a lease agreement (the "Lease") with Custom Pack for a thirty six (36) month term for certain real property bearing a municipal address of 555 Bayview Avenue, Biloxi, Mississippi (the "Lease Premises"). The Lease contained a provision at Article 15 that liquidated damages could be claimed if the Lease was terminated by the Debtors prior to the thirty six (36) month term (the "Liquidated Damages Provision")[3].

2. The Debtors intended to use the Leased Premises for off-site employee parking.

3. The Lease called for rent in the amount of $4,000.00 per month, payable on the first day of each month.

4. The Debtors paid the stipulated rent for the months of August and September 2005. The Debtors paid no other rent thereafter.

5. The Custom Pack property contained approximately five (5) acres of which a substantial portion was comprised of an asphalt paved parking lot.

6. Prior to the Debtors' Lease, Custom Pack had leased a portion of its parking lot as off-site parking to Boomtown Casino. Boomtown Casino had been a tenant for approximately nine (9) years. Custom Pack was reluctant to lose Boomtown Casino as a tenant without an increase in rent and a liquidated damages provision in the Debtors' Lease.

---

[2] The Court will use one set of defined terms throughout this Memorandum Opinion and Order.

[3] *See* paragraph 22 *infra*.

2

7. On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast, just two (2) days prior to the scheduled opening of the Debtors' facility.

8. The Debtors' facility and the Custom Pack plant were substantially destroyed.

9. In the aftermath of Hurricane Katrina, 1300 employees of the Debtors lost their jobs. The remaining 14 employees relocated to different office space.

10. By letter dated February 16, 2006 (the "Default Letter"), Custom Pack declared the Debtors to be in default of the Lease premised upon non-payment of rent for the months of October 2005 through January 2006. (Ex. 4).

11. No one employed by the Debtors recalled receiving the Default Letter, but the Debtors do not dispute receiving that letter.

12. By letter dated April 4, 2006 (the "Termination Letter"), Custom Pack terminated the Lease and also made demand for payment of the remaining balance of the thirty six (36) month term of the Lease pursuant to the Liquidated Damages Provision. (Ex. 5).

13. By letter dated April 7, 2006, the Debtors advised Custom Pack that, notwithstanding Hurricane Katrina, the Debtors were prepared to cure all Lease arrearages and assume the Lease on a going forward basis by May 15, 2006. This letter also advised Custom Pack of a list of items the Debtors' employees had observed at the Custom Pack site which would have precluded the Debtors' use of the property for its original intended purposes. Maintenance and repair of the parking lot were the Debtors' responsibility under the Lease. (Ex. 6).

14. By letter dated May 12, 2006, the Debtors again advised Custom Pack they were prepared to cure any defaults under the Lease. (Ex. 8).

15. By letter dated May 26, 2006, Custom Pack advised the Debtors that it was standing firm with its declaration of default and Lease termination and again demanded payment for the rent reserved for the balance of the Lease term, as liquidated damages. (Ex. 9).

16. Custom Pack re-let the parking lot property to Boomtown Casino for $5,000.00 per month for a six (6) month term. Boomtown did not renew its lease after the six (6) month term.

17. On September 19, 2006, the Debtors filed their petitions for relief (the "Petitions") (Dkt. #1)[4] pursuant to chapter 11 of the Bankruptcy Code.

18. On October 10, 2006, Custom Pack filed its Proof of Claim for the principal sum of $136,429.40 (the "Custom Pack Claim") (Claim No. 15).

19. On November 8, 2007, the Debtors filed its Objection to Proofs of Claim, which included *inter alia*, the Custom Pack Claim.

20. The Debtors contend that the Custom Pack Claim is subject to disallowance and should be limited by the statutory cap contained in Section 502(b)(6) of the Bankruptcy Code[5] (Dkt. # 574).

21. Custom Pack contends that its claim is not subject to the cap and it is in fact a claim for liquidated damages arising pursuant to Article 15 of the Lease, and the indebtedness arose prior to the filing of the Petitions.

---

[4] The Petition of Premier Entertainment Biloxi, LLC appears as Dkt. # 1 of Case No. 06-50975. The Petition of Premier Finance Biloxi Corp. appears as Dkt. # 1 of Case No. 06-50976. By Order of this Court (Dkt. # 49), entered by the Honorable Edward G. Gaines, on September 26, 2006, these two cases were consolidated for procedural purposes and jointly administered by the Court under Case No. 06-50975.

[5] Hereinafter all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

22.    The Liquidated Damages Provision provides, in pertinent part:

> tenant also agrees that should such default occur during the first thirty six (36) months of the initial Term, Tenant agrees to pay the remaining unpaid balance of the Lease Agreement as in for liquidated damages. Any liquidated damage amount that remains unpaid thirty (30) days following the written notice of termination shall bear interest at a rate of twelve percent (12%) per year compounded daily from the date of the written notice of termination until the date of collection, and Tenants shall bear all reasonable costs, including but not limited to legal fees, involved in such collection.

(Ex. 2 at Article 15).

At the Hearing, the parties stipulated to two additional facts as follows:

1.    The Liquidated Damages Provision in the Lease at Article 15 was a negotiated term.

2.    The Debtors received notice of default of the Lease (referenced in paragraph 10 *supra*).

## Issue

The issue before the Court is whether the Custom Pack Claim should be disallowed because it claims damages which are not allowed by Sections 502(b)(1) and (6).

## Discussion

The Debtors' Objection is based on Section 502(b) which provides in pertinent part that if an objection is filed, the Court shall determine the amount of the claim and shall disallow the claim to the extent that,

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
>
> . . . .
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds -

5

>    (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of -
>        (I) the date of the filing of the petition; and
>        (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>    (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

Section 502(b).

The Debtors assert that the Custom Pack Claim is governed by Sections 502(b)(1) and (6) because the claim was filed by Custom Pack, as a lessor in this circumstance, for damages it claims as a result of the termination of the lease of real property. Using the mathematical formula set forth in Section 502(b)(6), the Debtors contend that Custom Pack's damages as a result of the termination of the Lease, if allowed at all, must be capped at $48,000.[6] Custom Pack, on the other hand, argues that the Section 502(b)(6) cap does not apply to the Custom Pack Claim for $136,429.40, because the claim is for "liquidated damages" which are not "rent reserved" and, therefore, not subject to the cap.

### 1.    The Liquidated Damages Provision is Unenforceable.

The Court finds that the Custom Pack's claim is governed by Sections 502(b)(1) and (6). As such, Custom Pack's claim for liquidated damages must be disallowed. While Mississippi law allows for liquidated damages in certain circumstances, "[t]he Mississippi Supreme Court's cautious

---

[6] According to COLLIER ON BANKRUPTCY, "[u]nder this methodology, the court should determine the rent reserved under the lease, without acceleration, for the applicable time period immediately following the termination of the lease or the petition date, whichever is earlier. (If the rent were determined with acceleration, the landlord could argue that the entire remaining rent under the lease is due in the first instant after termination.)" 4 COLLIER ON BANKRUPTCY, § 502.03[7][c], p. 502-43 (Matthew Bender 15th Ed. Rev. 2005). The Court makes no determination here as to the correctness of the Debtors' calculation as that issue is not before the Court at this time.

approach to awarding liquidated damages is well-documented." 4 ENCYCLOPEDIA OF MISSISSIPPI LAW § 25.30 (Jeffrey Jackson & Mary Miller eds., 2001). In PYCA Industries, Inc. v. Harrison Co. Water Mgmt. Dist., 177 F.3d 351 (5th Cir. 1999), the Fifth Circuit, applying Mississippi law, held:

> Liquidated damages clauses are deemed unenforceable penalties generally only in limited cases where (1) "the actual damage resulting from the breach may be readily ascertained," or (2) "the contract discloses no intention to fix the sum as liquidated damages or leaves the intention in this regard in doubt."

Id. at 367. In this case, the actual damages resulting from the termination of the Lease are readily ascertainable by multiplying the Lease payment amount by the number of months left on the Lease. The Liquidated Damages Provision, therefore, is unenforceable under Mississippi law. The proper measure of damages in this case would be the actual damages Custom Pack suffered as a result of the termination of the Lease as capped pursuant to the mathematical formula in Section 502(b)(6).

### 2. The Liquidated Damages Provision is Subject to the Cap.

Even if Mississippi law allowed for liquidated damages under the Lease in a state court breach of contract action, "[b]ankruptcy alters a creditor's state law power to enforce his claims against the bankruptcy estate." In re Emple Knitting Mills, Inc., 123 B.R. 688, 691 (Bankr. D. Me. 1991). In the bankruptcy context, Custom Pack's arguments in this case must fail. First, Custom Pack cannot attach the denomination "liquidated damages" to its actual damages, which in this case are clearly for lost rent[7], and escape the effect of Section 502(b)(6). See In re McSheridan, 184 B.R. 91, 99 (9th Cir. BAP 1995)("It is apparent that bankruptcy courts must make an independent

---

[7] Exhibit 11 (an excerpt of the deposition of Clay Gutierrez of Custom Pack) and Exhibit 13 (e-mail correspondence between Debtors and Custom Pack) clearly show that Custom Pack's use of the Liquidated Damages Provision in the Lease was, in fact, an attempt to ensure that it received the remaining rental payments for the 36 month term should the Debtors default on the Lease.

determination of what constitutes "rent reserved" because labels alone may be misleading.")  To allow "labels" to govern the determination would completely eviscerate Section 502(b)(6).  All lessors would conceivably use such labels to avoid the consequences of the cap provided for in Section 502(b)(6).

Second, substantial and persuasive authority supports this Court's position that Section 502(b)(6) places a mandatory cap on the amount that may be allowed for *all* damage claims resulting from the termination of a lease of real property.  The bankruptcy court in In re Mr. Gatti's, Inc., 162 B.R. 1004 (Bankr. W.D. Tex. 1994) held that,

> [I]n all events, the burden is upon the landlord to show all damages resulting from the termination of the lease.  Upon such showing, the landlord's allowable claim is limited to the formula described in § 502(b)(6)(A) and, under subsection (B) of that section, any unpaid rent which was due under the lease without acceleration, on the earlier of the dates described in subparagraph (A).

Id. at 1009-10 (internal citation omitted).  The Fifth Circuit, citing Mr. Gatti's, agreed and stated, "[a] particularly thoughtful bankruptcy court opinion recently concluded that under 11 U.S.C. § 502(b)(6), *all* of the landlord's damages arising from the rejection of a debtor's lease . . .are capped by that provision." In re Austin Dev. Co., 19 F.3d 1077, 1082 n. 9 (5th Cir. 1994)(emphasis added).

The district court of Maryland held that "Section 502(b)(6) sets a limitation of a landlord's claim against a bankrupt-lessee's obligation under the lease of real property." Bel-Ken Assoc. Ltd. P'ship v. Clark, 83 B.R. 357, 358 (D. Md. 1988).  The bankruptcy court for the Western District of Oklahoma stated that "by enacting [Section 502(b)(6)] Congress has set mandatory limitations of the claim of a landlord for damages resulting from termination of a lease of real property." In re Weeks, 28 B.R. 958, 961 (Bankr. W.D. Okla. 1983).  The bankruptcy court for the District of Colorado explained that,

> This [Section 502(b)(6)] language does not qualify or in any way limit the type of damages involved. The damage cap applies to all damages, which are then arbitrarily capped and measured by rent reserved. Such a cap has been in the bankruptcy law for many years. *See*, Bankruptcy Act § 62a(9), FORMER 11 U.S.C. § 103(A)(9). In Oldden v. Toronto Realty Co., 143 F.2d 916 (2nd Cir. 1944)] the court enforced such a cap and held, in effect, that such a provision should be given full force and effect regardless of whether through artful draftsmanship the parties had sought to circumvent the statutes' mandate. . . .Thus as a matter of law, the actual damage claim of the [landlord] for termination of the lease, whether for non-payment of rent, taxes, costs, attorney's fees, or other financial covenants. . .are limited by the damage cap in § 502(b)(6)(A).

In re Storage Technology, 77 B.R. 824 (Bankr. D. Colo. 1987).

Additionally, public policy in the bankruptcy context strongly favors the statutory cap found in Section 502(b)(6). The relevant legislative history provides as follows:

> [Section 502(b)(6)], derived from current law, limits the damages allowable to a landlord of the debtor. The history of this provision is set out at length in Oldden v. Toronto Realty Co., 143 F.2d 916 (2nd Cir. 1944). It is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate. . . .*Moreover, his allowed claim is for his total damages, as limited by this paragraph.* . . ."

H.R. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977) pp. 353-355 (emphasis added).

In discussing the tension between the landlord and debtor, the Oldden case points to a fundamental premise:

> In truth, the landlord is not in the same position as other creditors, and there is no very compelling reason why he should be treated on a par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he regains his original assets upon bankruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate.

Oldden, 143 F.2d at 920.

9

### 3. Custom Pack's Legal Position is Unsupported.

The cases cited by Custom Pack simply do not support its position that it is entitled to its Liquidated Damages Provision, not subject to the statutory cap. First, the cases cited which discuss deferred rent have no application in the fact scenario presented in this case and, therefore, are unpersuasive. See Dkt. #620 at p. 8. The term "deferred rent" refers to consideration paid for use or occupation of property which comes due earlier than it is scheduled to be paid. See In re Malease 14FK Corp., 351 B.R. 34 (E.D.N.Y. 2006). The Lease Agreement between the Debtors and Custom Pack does not include any references to deferred rent, nor did the Debtors owe any deferred rent. Since there is no deferred rent issue in this case before the Court, these cases cited by Custom Pack are inapplicable.

Second, Custom Pack also relied improperly on the following cases: In re McSheridan, 184 B.R. at 91; In re Edwards Theaters Circuit, Inc., 281 B.R. 675 (Bankr. C.D. Cal. 2002); Smith v. Sprayberry Square Holdings, Inc. (In re Smith), 249 B.R. 328 (Bankr. S.D. Ga. 2000); and, In re Fifth Avenue Jewelers, Inc., 203 B.R. 372 (Bankr. W.D. Pa. 1996).

The McSheridan case outlines the Ninth Circuit Bankruptcy Appellate Panel's three-part test for determining "rent reserved" since that term is not defined in the Bankruptcy Code. The McSheridan court held that in order for a charge to constitute "rent reserved" under Section 502(b)(6)(A),

> 1) The charge must: (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;
>
> 2) The charge must be related to the value of the property of the lease thereon; and
>
> 3) the charge must be properly classifiable as rent because it is a fixed, regular or periodic charge.

McSheridan, 184 B.R. at 99.  What Custom Pack failed to note, however, is that McSheridan goes on to hold that "all damages due to nonperformance [of the lease] are encompassed by [§ 502(b)(6)]" and "[t]he bankruptcy court did not err by limiting Appellants' total damage claim by the provisions of § 502(b)(6)(A)."  Id. at 102.

Custom Pack also relied on In re Edwards for its proposition that the Liquidated Damages Provision is not subject to the statutory cap.  281 B.R. at 675.  Custom Pack's reliance is again misplaced.  The creditor in Edwards argued that it was entitled to $15,000,000 in damages because the debtor breached its obligation to build a theater on the leased real property.  Id. at 678.  The creditor also asserted that those damages were not capped under Section 502(b)(6)(A) because they were "unpaid rent" under Section 502(b)(6)(B).  Id. at 680.  Finding that the McSheridan test applied to both claims under Sections 502(b)(6)(A) and (B), the Edwards court held that the debtor's construction obligation was not rent under the McSheridan test, sustained the debtor's objection, and did not award the creditor those damages requested that did not pass this test.  Id. at 684-85.

Custom Pack also incorrectly relied on In re Smith, 249 B.R. at 328.  The bankruptcy court in Smith held that, "[u]nder McSheridan, a charge is not determined by its label but by its substance."  Id. at 338.  The court found that "Excused Rent" failed the second and third prongs of the McSheridan test because it "was not related to the value of the premises" and was not "fixed, regular or periodic" but "only became due upon default."  Id.  The court then concluded that, "[b]ecause [the creditor's Excused Rent damage claim] fails the McSheridan test for rent and is in substance a penalty charge [for default], it is disallowed under § 502(b)(6)(B)."  Id.  The Smith court also held that the building allowance damages claimed by the creditor did not meet the requirements of the McSheridan test and, therefore, likewise were disallowed. Id. at 339.

11

Finally, Custom Pack improperly relied on In re Fifth Avenue Jewelers, 203 B.R. at 372. In that case, the bankruptcy court considered "whether charges in addition to unpaid rent can be included in the cap under § 502(b)(6), and whether mitigation of actual damages impacts calculation of the cap." Id. at 380-81. Adopting the McSheridan test, the court held that liquidated damages "may not be included in the cap as rent because they are not a fixed, regular, or periodic charge. . .are clearly not regular or periodic, and they cannot be fixed because they are only recoverable in the event of a contractual default." Id. at 381. This finding, however, did not result in the court finding that the liquidated damages should be awarded without the Section 502(b)(6) limitation. In fact, the court did not award the creditor any liquidation damages at all. Id. at 385.

In fact, in none of the cases relied upon by Custom Pack did any court award uncapped liquidated damages claims to the creditors. To the contrary, the courts in each of these cases found that when the claim failed to meet the requirements of the McSheridan test for rent, that claim was disallowed in its entirety. Thus, the cases cited by Custom Pack do not support its position.

**Conclusion**

This Court finds that Custom Pack is not entitled to liquidated damages because the Creditor's actual damages are readily ascertainable. Under these circumstances, the Liquidated Damages Provision in the Lease is unenforceable under Mississippi law. Furthermore, even if Mississippi law allowed liquidated damages in this circumstance, the claim for liquidated damages by Custom Pack would fail pursuant to the cases cited herein. For these reasons, Debtors' Objection as to Custom Pack should be sustained, and the Custom Pack Claim must be disallowed[8]. A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

---

[8] Since Custom Pack did not include any plea for alternative relief, none is granted.

IT IS, THEREFORE, ORDERED that the Debtors' Objection hereby is sustained, and the Custom Pack Claim is disallowed.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: April 29, 2009